UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES D. FOLEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF RANDOLPH, RICHARD D. WELLS, in his official capacity, PAUL J. CONNORS, in his official capacity, WILLIAM ALEXOPOULOS, in his official capacity, MAUREEN C. KENNY, in her individual and official capacities, AND JAMES F. BURGESS, JR., in his individual and official capacities, <br><br> Defendants. | Civil Action No. 07-12213-PBS |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT/IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submit this memorandum of law in opposition to plaintiff's Motion for Summary Judgment and in support of their own cross-motion.

### Allegations of Complaint

Plaintiff, the defendant Town's Fire Chief, has sued defendants Town of Randolph and its five selectmen Richard Wells, Paul J. Connors, William Alexopoulos, Maureen C. Kenney, and James F. Burgess, Jr. in their official capacities (and the latter two individually) because on September 10, 2007 he was suspended for three weeks based on his conduct at the scene of a fatal fire on May 17, 2007. That conduct involved (1) statements which plaintiff made to the electronic and print media about staffing and funding during an official press conference and (2) his initiation of physical contact with one of his supervisors, defendant Burgess. The Board adopted by a 3-2 vote the recommendation of a hearing officer who heard evidence, made findings, and recommended a suspension based on his findings. Plaintiff has brought five claims

for violation of his First Amendment right of speech (Count I), violation of his Art. XVI right of speech under the Massachusetts Declaration of Rights (Count II), violation of the Massachusetts Whistleblower Statute, G.L. c. 149, § 185 (Count III), "breach of contract"/violation of G.L. c. 48, § 42 (Count IV), and intentional interference (Count V) (against Burgess and Kenney only).

### <u>**Undisputed Material Facts**</u>

The duties and responsibilities of the Randolph Fire Chief include responding to inquiries from the electronic and print media regarding the activities of, and events and incidents involving, the Town's Fire Department. While this responsibility is not expressly required by any written document, it is a clear and implicit expectation of the person holding the position of Fire Chief. Plaintiff has continued that responsibility by responding on numerous occasions to media inquiries regarding the Department and its activities, events, and incidents. [Defendants' Statement, Part B, ¶ 4]. This is consistent with the widespread practice in Massachusetts, under which the Fire Chief is the chief spokesperson for the fire department and has the authority and responsibility for maintaining relations with, and providing information about activities of the Fire Department to, the media.[Statement, Part B, ¶ 5].

In August, 2006, plaintiff was given a written performance evaluation with respect to his employment as Fire Chief. In that evaluation, one of the seven categories for which he received an evaluation score was "public and community relations/communications". This specifically included the function "[i]nteracts well with the media" [Statement, Part B, ¶ 7]. Plaintiff admits that responding to media inquiries about the activities of the Randolph Fire Department is within his authority in his position as Fire Chief [Statement, Part B, ¶ 6].

At the May 17, 2007 press conference, the State Fire Marshal "spoke with and answered questions posed by the media about the fire". The subject matter of the press conference at the

fire scene, during which the State Fire Marshal and plaintiff answered questions from the media, was the fire, the deaths, and the response and activities of the Town's Fire Department. At the time of the press conference, plaintiff was on duty and in uniform, and fire suppression activities by the Randolph Fire Department were still ongoing [Statement, Part B, ¶¶ 1-3].

The hearing officer who conducted plaintiff's disciplinary hearing made fact findings about what had occurred at the May 17, 2008 fire scene and recommended that plaintiff be suspended for two different reasons – (1) that plaintiff had "initiate[d] inappropriate and unprovoked physical contact with [defendant] Burgess by pushing by hand a draft Patriot Ledger news article into Mr. Burgess' chest at the scene" and (2) that at the scene plaintiff "ma[d]e inappropriate, inaccurate, intemperate and misleading statements to the news media … while in full uniform and while in pursuit of his duties as fire chief". On September 10, 2008, the Board of Selectmen, by a 3-2 vote (defendants Burgess, Kenney and Wells voting in favor), voted to adopt the hearing officer's findings, conclusions, and recommendations and to suspend plaintiff [Statement, Part B, ¶¶ 8,9].

Defendants Burgess, Kenney, and Wells voted to discipline plaintiff by voting to adopt the hearing officer's findings, conclusions, and recommendations. Even if plaintiff had not made the statements which he made during the May 17, 2007 press conference, defendants would have voted to suspend him based on the finding that he had initiated inappropriate physical contact with defendant Burgess [Statement, Part B, ¶¶ 10, 11].

With respect to the statements made by plaintiff at the press conference, the basis for discipline was the belief that those comments suggested or implied the conclusion that the Town's funding and staffing of the Fire Department may have caused the tragic deaths of two children in the fire, even though the State Fire Marshal's investigation of the fire was still

ongoing and had reached no conclusions or findings and even though there were no facts substantiating that speculation; that it was inappropriate for plaintiff to indulge in this sort of speculation to the media under the circumstances, exacerbated by the fact that he made no statement of condolence or regret regarding the tragic deaths of two children and made no statement commending the courage and professional competence of the Town's firefighters who responded to the scene; and that, instead, plaintiff should have confined himself to providing factual information, if any, then known to him concerning the fire and the fatalities. At the hearing, one of the fire chiefs called as a witness by plaintiff testified that at a fatal fire scene it is not appropriate to raise staffing and budgetary issues [Statement, Part B, ¶¶ 12, 13].

No statement made by plaintiff to either defendant Burgess or plaintiff Kenney at the fire scene on May 17, 2007 played any role in their votes. Neither defendant Burgess nor defendant Kenney voted to suspend plaintiff based on malice, ill will, or for any reason other than those found and recommended by the hearing officer. Prior to the May 17, 2007 fire plaintiff had provided reports to the Board of Selectmen and to other Town bodies regarding his views about staffing and funding, but no disciplinary action was taken based on those reports. At the time of the May 17, 2007 fire, plaintiff's employment was not the subject of a contract [Statement, Part B, ¶¶ 14-17].

## ARGUMENT

### I.  UNDER *GARCETTI*, PLAINTIFF'S SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT

Plaintiff's First Amendment claim directly implicates the Supreme Court's recent decision in *Garcetti v. Ceballos,* 547 U.S. 410 (2006). In that case the Court clarified its prior decisions in *Connick v. Myers,* 461 U.S. 138 (1983) and *Pickering v. Board of Education,* 391 U.S. 563 (1968), which had defined and limited the free speech rights of public employees.

Specifically, *Garcetti* explicated the test formulated in *Connick v. Myers, supra* at 147, which had held that if an employee speaks as a "citizen" on a matter of "public concern" that speech is protected unless on balance the employer's governmental interests in an efficient workplace nonetheless justify the discipline, *Pickering v. Board of Education, supra* at 568. *Garcetti* decided that where the "speech" occurs in the performance of the employee's duties, he is not speaking as a citizen and no further analysis is required as to "public concern" or balancing. *Garcetti, supra* at 421.

In *Garcetti,* a deputy district attorney had submitted a memorandum to his supervisors in which he recommended dismissal of a prosecution because of inaccuracies in the affidavit used to obtain a critical search warrant. After he was subjected to reassignment and transfer and was denied a promotion, he brought suit alleging that his  First Amendment right of free speech had been violated under *Connick, supra* and *Pickering, supra.* Ultimately, the Supreme Court ruled that he had not spoken as a "citizen" because the memorandum was prepared in the course of performing his employment. The Court held that the critical factor is whether the employee's "expressions were made pursuant to his duties". *Garcetti, supra* at 421. If they are, no further analysis is required and they fall outside First Amendment protection. *Id.*

The Court noted that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties [he] may have enjoyed as a private citizen [because] [i]t simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421-22. It ruled that "[w]hen he went to work and performed the tasks he was paid to perform, [the employee] acted as a government employee." *Id.* at 422. "The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id.* The Court observed that

"[o]fficial communications have official consequences, creating a need for substantive consistency and clarity" and that "[i]f [the employee's] superiors thought his memo was inflammatory or misguided, they had the authority to take proper corrective action" *Id.* at 422-23. Moreover, *Garcetti* held that the "proper inquiry is a practical one". *Id.* at 424. It therefore ruled that "the listing of a given task in an employee's job description is neither necessary nor sufficient", and that the test accordingly is not being focused on "[f]ormal job descriptions" but looks instead to "the duties an employee actually is expected to perform". *Id.* at 424-25.

The First Circuit has recently applied *Garcetti* in *Curran v. Cousins,*509 F.3d 36 (1st Cir. 2007). As a consequence, in this Circuit the initial step for analysis of plaintiff's claim now involves two subparts, both of which must be answered "yes" in order for that claim to remain alive for the second step. Plaintiff must prove both that he spoke "as a citizen" *and* that his speech was "on a matter of public concern", in that order. *Id.* at 45. Only if these hurdles are passed can the court move to the second, "balancing" step. Moreover, both steps are decided by the judge "as a matter of law." *Id.* Even if plaintiff survives this two-step analysis, he still must show that the speech "caused" the discipline. *Id.* At that stage, defendants are entitled to prove that the same decision would have been made regardless the protected speech. *Id. See Mt. Healthy City Sch. Dist. Bd of Ed. v. Doyle,* 420 U.S. 274 (1977). Plaintiff's claim fails to survive the initial, *Garcetti* step and no further inquiry is needed or appropriate.

Defendants have found two decisions decided post-*Garcetti* in which an employee engaged in speech to the media while performing his job. In each, the court ruled that the claim was barred by *Garcetti.*

In *Nixon  v. City of Houston,* 511 F.3d 494 (5th Cir. 2007), *cert. denied* 128 S.Ct. 2504 (2008), a police officer was terminated based on statements he made to the media at an accident

scene and the next day during interviews and filed suit. The underlying incident was a high speed police pursuit which was called off, after which the fleeing suspect struck and killed an innocent motorist. Although not directed to report to the scene, the plaintiff officer went there anyway. Although he was not designated as a department spokesperson and "was not authorized to make statements to the media at the scene" he did so anyway, sharply criticizing the department's decision to disengage. *Id.* at 496-97. He followed up with similar statements the next day to call-in radio shows and on television interviews. *Id.* at 497. He was then fired. The Fifth Circuit, applying *Garcetti,* held that his speech was not protected even though it was "unauthorized" and "speaking to the press was not part of his regular job duties". *Id.* at 498-99. The court ruled that *Garcetti* controlled because the speech was made "during the course of performing his job", noting that he "spoke to the media while on duty, in uniform, and while working at the scene of the accident." *Id.* at 498. It observed also that he had unsuccessfully sought approval from a supervisor to speak and that his speech "was intended to inform the public of the circumstances of the high-speed chase, the subsequent accident, and [the department's] high-speed chase policy." *Id.* at 498.[1]  In sum, the court held that on these facts "there is 'no relevant analogue to speech by citizens'" [quoting *Garcetti, supra* at 424]. Although the statements made the next day "more closely approximate citizen speech, as [the employee] was presumably off-duty", the court held that they, too, were unprotected as merely a "continuation" of the statements made at the accident scene. *Id.*

The second case is *Dunleavy v. Wayne County Comm'n,* 2006 WL 2375679 (E.D. Mich. 2006). There, a county auditor claimed that his First Amendment rights had been violated when he was not reappointed after he spoke publicly and to the media about possible violations of law.

---

[1] The court also noted that under the department's media relations policy, "speaking with the media is arguably one of an officer's job responsibilities". *Id.* at 499.

The plaintiff had conceded in deposition that part of his job involved "interacting with the media" on matters related to his audits and investigations. *Id.* at *4. Applying *Garcetti,* the court held that the plaintiff's speech occurred as part of his official duties even though his speech was not "explicitly required" in his job description. Pointing to *Garcetti*'s admonition that the court look beyond a written job description to determine whether the speech  was "'within the scope of the employee's professional duties'" and noting that speaking to the media "went hand-in-hand with" tasks which were listed, the court held that his First Amendment claim should be dismissed. *Id.* [quoting *Garcetti, supra* at 424-25].

Plaintiff cites no cases applying *Garcetti* to speech by an employee to the media while on duty and performing his job. Instead, he cites two post-*Garcetti* decisions which involve different circumstances and one case, also involving different circumstances, which was decided more than two decades before *Garcetti.*

In *Reilly v. City of Atlantic City,*     F.3d    , 2008 WL 2579185 (3rd Cir. 2008), a police officer brought suit alleging that he had been retaliated against based on his testimony at a trial. Although the defendants argued that *Garcetti* controlled because the testimony "appears to have stemmed from [the officer's] official duties in the investigation" which led to the trial, the Third Circuit disagreed. *Id.* at *12. Noting that "'the duty to testify [is] a basic obligation that every *citizen* owes his Government'", the court held that "[w]hen a government employee testifies truthfully, she is not 'simply performing his or her job duties', …; rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence.'" *Id.* at *12-13 [citations omitted]. *Reilly* is therefore a case about testimony before a tribunal.

In *Snelling v. City of Claremont,*155 N.H. 674, 931 A.2d 1272 (2007), a city assessor sued, alleging that he had been fired in retaliation for his participation in a series of interviews by

a local newspaper during which he attacked the unfairness of the city's tax system.[2] The New Hampshire Supreme Court held that this speech was not covered by *Garcetti* precisely because the comments bore no relation to issues which were within the employee's job responsibilities regarding "property valuation and assessments." *Id.* at 1281.[3]

Plaintiff's third case is *Brasslett v. Cota,* 761 F.2d 827 (1st Cir. 1985). There a fire chief brought suit alleging that he had been fired for remarks made during a television interview in which he was critical of the equipment provided to his department. The First Circuit held that this violated his First Amendment rights. *Id.* at 846. *Brasslett* is irrelevant for three reasons. First, and most important, it was decided more than twenty years before the Supreme Court issued *Garcetti.* Moreover, although the interview took place at the fire station and the plaintiff was in uniform, there is no indication whether he was "on duty" or what tasks he regularly performed. *Id.* at 830-32. Second, the threshold "public concern" issue was never litigated by the defendants. *Id.* at 844 n.14. Accordingly, the court made only passing reference to *Connick, supra,* and gave no analysis of *Connick's* three-element "public concern" test. *Id.* Finally, and because of this, the court's entire analysis was limited to the *Pickering* "balancing" test. *Id.* at 844-46. Accordingly, *Brasslett* lends no assistance to the *Garcetti* evaluation in this case.

Measured by *Garcetti, Nixon,* and *Dunleavy,* defendants are entitled to summary judgment at the threshold step. Plaintiff was on duty at the fire scene, in full uniform and superintending the activities of the his firefighters. He participated in an official press conference called to answer questions by the media about the fire, about the two deaths, and about the

---

[2] The court's opinion contains no indication whether the employee was on duty when he spoke with the reporter. *Id.* at 1277.

[3] To the extent that the court relied on the fact that the employee's job description "does not indicate that he was required to communicate with the public on any matter other than the office's procedure and techniques", it is in direct contravention of *Garcetti*. *Id.* at 1280-81. *See Garcetti, supra* at 424-25.

Randolph Fire Department's response. In fact, he could only participate in that press conference *because* he was the Town's Fire Chief – this was not an open forum at which citizens could take the microphone and express their views. Plaintiff was asked several questions about the fire, the department's response, and the deaths [Magner Aff., Exh. A]. His statements were made in response to those questions. Unlike the officer in *Nixon,* plaintiff has admitted in his Verified Complaint that he was authorized to handle media inquiries about the department and its activities and therefore that this function was within the scope of his position as Fire Chief [Verified Complaint, ¶ 20]. Moreover, it is undisputed that the Randolph Fire Chief is expected to, and does, regularly respond to questions from the media regarding the Fire Department and its activities, consistent with the practice throughout Massachusetts. In fact, as recently as August, 2006, plaintiff had received a job evaluation which specifically assessed his performance of communications with the public, including the function "[i]nteracts well with the media" [Burgess Aff., Exh. C]. Under *Garcetti,* a more clear cut case could not be imagined. Plaintiff's statements were made as an employee, not as a "citizen", and "[i]f [his] superiors thought his [statements were] inflammatory or misguided, they had the authority to take proper corrective action." *Garcetti, supra* at 422-23.

## II.  DEFENDANTS BURGESS AND KENNEY ARE ENTITLED TO QUALIFIED IMMUNITY

To the extent that plaintiff's claim in Count I is asserted against defendants Burgess and Kenney individually, those defendants are entitled to summary judgment on qualified immunity grounds. The First Circuit applies a three-part test which determines "whether the plaintiff's allegations, if true, establish a constitutional violation, 'whether the right was clearly established at the time of the alleged violation',[and] whether a reasonable [person], similarly situated, would understand that the challenged conduct violated that established right." *Suboh v. Dist.*

*Attorney's Office,* 298 F.3d 81, 90 (1st Cir. 2002). First, as already shown, plaintiff's "right" to

make the statements at the press conference was not established in May, 2007. In fact, after

*Garcetti, supra* at 421-25, and *Dunleavy, supra* at *4, the precise *opposite* was established in

2006. Even if, however, an "abstract 'right'" was established, as a matter of law on these facts "a

reasonable official in [defendants'] position could believe, albeit mistakenly, that [their] conduct

did not violate the First Amendment in light of *Garcetti* and the circumstances. *Philip v. Cronin,*

F.3d  , 2008 WL 3115352 *8 (1st Cir. 2008). *See also Wagner, supra* at 509; *Bowler v. Town of*

*Hudson,* 514 F.Supp.2d 168, 183 (D. Mass. 2007), stating that qualified immunity "contemplates

[understandable] errors and mistakes."[4]

### III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AT THE THIRD, *"MT. HEALTHY"* STEP.

Even if plaintiff could overcome this obstacle, he faces another insurmountable hurdle.

Defendants "must have the opportunity to prove that [they] would have made the same decision

regardless of the protected speech. *Curran, supra* at 45 [citing *Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle,* 429 U.S. 274, 287 (1977)]. Here, the hearing officer made findings and

recommendations that plaintiff be suspended for two separate reasons –(1) his statements to the

media and (2) his initiation of physical contact with one of his supervisors, Burgess [ Burgess

Aff., Exh. A]. Defendants' vote to suspend did so by adopting the hearing officer's findings and

report [Burgess Aff,. Exh. B]. In answers to interrogatories asking them to specify their

*individual* reasons for voting to suspend, the three defendants who so voted have invoked and

---

[4] Assuming solely *arguendo* that plaintiff properly has sued Burgess and Kenney individually for a violation of Art. XVI of the Declaration of Rights in Count II, the same result should obtain. *See Breault v. Chairman of the Bd. of Fire Comm'rs. of Springfield,* 401 Mass. 26, 31-32 (1987), *cert. denied sub nom. Forastiere v. Breault,* 485 U.S. 906 (1988).

relied on the hearing officer's report [Foskett Aff., Exh. A, B, C].[5] Each has categorically stated

by affidavit that even if plaintiff had *not* made the statements at the press conference, they would

still have voted to suspend based on the physical contact [Burgess Aff., ¶7; Wells Aff., ¶7;

Kenney Aff., ¶6]. Of course, that is a legitimate reason for suspension which has no

constitutional implications. Defendants are therefore entitled to summary judgment. *Torres-*

*Rosado v. Ramos-Roman,* 335 F.3d 1, 13-14 (1st Cir. 2003). At a minimum, this defeats

plaintiff's motion.

## IV.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ART. XVI SPEECH CLAIM.

Plaintiff's claim under Part 1, Art. XVI of the Massachusetts Declaration of Rights is

controlled by *Garcetti.* Massachusetts "freedom of speech analysis is guided by the Federal

analysis." *Hosford v. Sch. Committee of Sandwich,* 421 Mass. 708 n.5 (1996). In particular,

Massachusetts courts which are confronted by public employee speech claims under Art. XVI

invariably apply the Supreme Court's analysis. *See Gauthier v. Town of Dracut,* 19 Mass.L.Rptr.

579, 2005 WL 1669121 *5-6 (2005), following *Smith v. Comm'r of Mental Retardation,* 409

Mas. 545, 552 (1991) and evaluating the employee's claim under *Connick, supra, Pickering,*

*supra,* and *Mt. Healthy, supra; Mahoney v. Ragucci,* 2002 WL 34059084 *5-7 (2001), following

*Hosford, supra* and *Smith, supra,* and therefore analyzing the employee's claim under *Connick,*

*supra.* Defendants have found no cases which have yet been decided under Art. XVI  after

*Garcetti.* There is little doubt, however, that *Garcetti* applies. *Garcetti* is simply an application of

the rule formulated in *Connick* and *Pickering* by the very Court which issued those decisions.

Any other conclusion is simply implausible and defendants are entitled to summary judgment on

Count II.

---

[5] Plaintiff omits reference to these answers.

## V.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE "WHISTLEBLOWER" CLAIM

In Count III, plaintiff asserts a retaliation claim under the Massachusetts Whistleblower statute, G.L. c. 149, § 185. That statute, § 185(b), protects a public employee from retaliation based on three different types of activity. Plaintiff asserts that his statements at the press conference constitute the "disclosure" activity protected by § 185(b)(1) and that the discipline imposed for his statements constitutes unlawful retaliation [Memorandum at 17].[6]  His claim fails.

Section 185(b)(1) bars retaliatory action against an employee who "[d]iscloses, or threatens to disclose *to a supervisor or to a public body* an activity, policy or practice of the employer … which the employee reasonably believes poses a risk to public health, safety, or the environment by the employer, or by another employer with whom the employee's employer has a business relationship." [emphasis added]. Section 185(a)(3) has a specific definition of the term "'[p]ublic body'":

> (A) the United States Congress, any state legislature, any member or employee thereof; (B) any federal, state or local judiciary, or any member or employee therof, or any grand or petit jury; (C) any federal, state or local regulatory, administrative or public agency or authority, or instrumentality thereof; (D) any federal, state or local law enforcement agency, prosecutorial office, or police or peace officer; or (E) any division, board, bureau, office, committee or commission of any of the public bodies described in the above paragraphs of this subsection.

Simply put, plaintiff's statements at the press conference were not a disclosure to a "public body". The statute is enforced according to its terms and a claim for retaliation must

---

[6] The other protected activities are set forth in § 185(b)(2), *i.e.,* providing information or testimony to a public body conducting an investigation, hearing, or inquiry, and in § 185(b)(3), *i.e.,* objecting to or refusing to participate in certain activities, policies, or practices.

satisfy those terms. *See, e.g., Dirrane v. Brookline Police Dep't,* 315 F.3d 65, 73 (1st Cir. 2002);

*Wagner v. City of Holyoke,* 404 F.3d 504, 509 (1st Cir. 2005); *Bennett v. City of Holyoke,* 362

F.3d 1, 8-9 (1st Cir. 2004). Plaintiff's statements were made to the assembled electronic and print

media and, at the farthest, to their viewers and readers. The statute's definition and requirement

with respect to a "public body" must be respected. *See Lamica v. Town of Southbridge,* 2006 WL

3487017 *4 n.3 (D. Mass. 2006). The purpose of the statute is not to protect employees who take

their cases to the media or to their readers or viewers. Instead, it is intended to insulate those who

make disclosures of wrongdoing or safety risks to governmental entities with the jurisdiction to

address those problems. As such, plaintiff has no "whistleblower" claim.

       As a backup argument, plaintiff asserts that he made disclosures to his "supervisors",

defendants Burgess and Kenney, at the scene [Memorandum at 17]. Even assuming solely

*arguendo* that the statements which he made to each could generously be described as falling

within § 185(b)(1), his claim fails [Kenney Aff., ¶ 5; Burgess Aff., ¶ 3]. Those statements played

no role in the decision to discipline. The vote to impose discipline adopted the hearing officer's

findings, conclusions, and recommendations [Burgess Aff., Exh. B]. The hearing officer did not

conclude that the statements to Burgess and Kenney were in any way a basis for discipline and

made no finding or recommendation to that effect [Burgess Aff., Exh. A]. Both Burgess and

Kenney categorically deny that the statements played any role in their votes [Burgess Aff., ¶4;

Kenney Aff., ¶6]. This evidence is buttressed by the undisputed fact that in the past plaintiff *had*

stated his views about staffing and funding to the Board of Selectmen and to other Town

officials, but had incurred no discipline [Burgess Aff., ¶6]. Defendants are therefore entitled to

summary judgment.[7]

## VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER G.L. c. 48, §42.

In Count IV, plaintiff alleges that defendants committed "breach of contract" and a

violation of the "Strong Chief" statute, G.L. c. 48, § 42. Like his other claims, this one is fatally

flawed. First, it is undisputed that by May, 2007 plaintiff and the Town were not parties to an

employment contract. Instead, because they had been unable to successfully negotiate a contract,

plaintiff was simply reappointed under the statute. His theory that the statute was violated is

narrow and crystal clear. Because the statute provides that he "may be removed for cause by the

selectmen at any time after a hearing" and therefore does not expressly mention lesser discipline

such as a suspension, plaintiff argues that defendants violated the statute by failing to remove

him and instead merely suspending him [Memorandum at 18]. The claim should be categorically

rejected.

First, it is clear that defendants had "cause". Section 42 uses that term instead of "just

cause". *Compare* the Civil Service Law, G.L. c. 31, § 41 ("just cause") and *Sch. Committee of

Brockton v. Civil Service Comm'n,* 43 Mass.App.Ct. 486, 488, *rev. denied* 426 Mass. 1104

(1997) (defining "just cause"); G.L. c. 48, § 58, an alternative local option statute for fire chiefs

which provides that a chief appointed under that section can be removed for "just cause". The

Legislature's failure to modify "cause" with "just" in § 42 must be given import. *See Comm. v.

Caracciola,* 409 Mass. 648, 653 n.8 (1991). In fact, "cause" in the public employment context

has been defined in Massachusetts as "any ground asserted in good faith which is not arbitrary,

---

[7] Of course, plaintiff could not in any event subject Burgess or Kenney to personal liability under the statute. *Ahanotu v. Mass. Turnpike Auth.,* 466 F.Supp.2d 378, 396 (D. Mass. 2006.

unreasonable, or irrelevant to" the Town's mission of "ensuring efficient management" of its fire

protection services. *Sweeney v. Town Manager of Lexington,* 379 Mass. 794, 798(1980). As a

matter of law, defendants had "cause". They concluded that plaintiff's comments suggested or

implied the conclusion that the Town's funding and staffing of the Fire Department may have

caused the tragic deaths of two children in the fire, even though the State Fire Marshal's

investigation of the fire was still ongoing and had reached no conclusions or findings and even

though there were no facts substantiating that speculation. They also concluded that it was

inappropriate for plaintiff to indulge in this sort of speculation to the media under the

circumstances, exacerbated by the fact that he made no statement of condolence or regret

regarding the tragic deaths of two children and made no statement commending the courage and

professional competence of the Town's firefighters who responded to the scene; and that,

instead, plaintiff should have confined himself to providing factual information, if any, then

known to him concerning the fire and the fatalities.[8] In fact, a fire chief called by *plaintiff* as a

witness during the hearing testified that raising issues about staffing and funding at a fatal fire

scene is simply inappropriate [Foley Aff., ¶ 45]. Defendants could validly and properly adopt the

hearing officer's rational conclusion that these comments were not only "unprofessional" but

"have a potential for eroding public confidence in fire protection services…and a potential for

further exacerbating emotional trauma to the grieving family members" [Burgess Aff., Exh. A at

¶10]. Separately, defendants properly determined that plaintiff's physical contact with a

supervisor was a valid basis for discipline. Defendants' conclusions were far from "arbitrary,

unreasonable, or irrelevant" to the "efficient management" of the fire department. *Sweeney,*

---

[8] In fact, rather than extending condolences regarding the two deaths, plaintiff had the gall to characterize himself as a "victim" of a past layoff [Magner Aff., Exh. A at 3].

*supra* at 798. That leaves the argument that defendants could only "remove" plaintiff and could not opt for lesser discipline.

Massachusetts statutes must be construed to avoid "absurd" or "unreasonable" results. *North Shore Realty Trust v. Comm.,* 434 Mass. 109, 112 (2001). The notion that any time a fire chief appointed under § 42 must be fired when he or she does anything which warrants a written warning or reprimand; a suspension, however brief; being placed on an improvement program; or being put on punishment duty, is facially absurd. Moreover, it would transgress public policy. Plaintiff's argument would no doubt come as a shock to municipalities and fire chiefs throughout Massachusetts which are covered by § 42. The same would apply in those municipalities which have adopted § 58 because, like § 42, that statute mentions only removal. If the absence of any express reference to lesser discipline in § 42 means anything, it can plausibly only mean that even *less* than "cause" is required to impose discipline which falls short of termination. This court should apply that conclusion to plaintiff's suspension.

## VII.  DEFENDANTS BURGESS AND KENNEY ARE ENTITLED TO SUMMARY JUDGMENT ON THE INTERFERENCE CLAIM

In Count V, plaintiff has sued Burgess and Kenney for intentional interference. This claim, too, is subject to summary judgment for defendants.

Massachusetts law is clear that in the employment context a plaintiff who sues individual officials of the employer bears the burden of proving that they acted with "'actual malice'". *Blackstone v. Cashman,* 448 Mass. 255, 260 (2007) [citation omitted]. This means "'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" *Id.* at 261 [quoting *Wright v. Shriners Hosp. for Crippled Children,* 412 Mass. 469, 476 (1992)]. This is a burden placed on plaintiff and not a defense which must be proved by the defendant. *Id.* As members of the Board which controls plaintiff's employment and as his supervisors, Burgess and Kenney are covered

by this exacting standard of proof. *Id.* at 266. Given the undisputed facts, plaintiff has no hope of meeting his burden.

The only evidence is that Burgess and Kenney voted as they did based on plaintiff's conduct at the fire scene on May 17, 2007. While plaintiff might contest whether discipline was warranted, there can be no doubt that the actions of Burgess and Kenney were neither "'spiteful [or] malignant'" or that they were "'unrelated to the legitimate [municipal] interest.'" *Blackstone, supra* at 261 [citation omitted]. He has presented nothing showing spite, personal animus, ill will, or malignant purpose, and Burgess and Kenney have categorically disclaimed any such motivation [Burgess Aff., ¶8 ; Kenney Aff., ¶7]. Kenney had only just been elected to the Board and her prior interactions with plaintiff were amicable [Kenney Aff., ¶7]. Plaintiff had previously presented his views on staffing and funding to the Board and to other Town officials, but Burgess had taken no disciplinary action against him [Burgess Aff., ¶6].[9] Defendants therefore are entitled to summary judgment on Count V. *See Taylor v. Town of Freetown,* 479 F.Supp.2d 227, 241 (D. Mass. 2007).

## CONCLUSION

For the reasons set forth herein, plaintiff's motion should be denied and defendants' motion should be granted.

---

[9] Of course, plaintiff cannot take a legitimate, perfectly appropriate grounds for discipline, *i.e.,* his physical contact with Burgess, and use *that* as a basis to establish that Burgess was motivated by tortious spite or malignancy. Although his assertion that he in fact apologized to Burgess is disputed, plaintiff concedes that his conduct warranted an apology [Foley Aff., ¶41; Burgess Aff., ¶9]

TOWN OF RANDOLPH, ET AL.
By their attorneys

*/s/ John Foskett*
Paul R. DeRensis, BBO# 121000
John Foskett, BBO# 175540
Kimberly M. Saillant, BBO# 548775
DEUTSCH WILLIAMS BROOKS
DERENSIS & HOLLAND, P.C.
One Design Center Place
Suite 600
Boston, MA 02210
Dated:  September 2, 2008                    (617) 951-2300

## CERTIFICATE OF SERVICE

I, John Foskett, certify that I understand that counsel of record will receive electronic notice of the electronic filing of this pleading.

/s/ *John Foskett*
John Foskett